IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUSAN JORDAN              :

                       :

     v.                    : Civil Action No. DKC 2006-0887

                       :

SOUTHERN MANAGEMENT CORP.    :

                       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are cross motions for summary judgment. (Papers 21 & 31).  The issues are fully briefed and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the reasons that follow, Defendant's motion for summary judgment will be granted and Plaintiff's motion will be denied.

**I.   Background**

   **A.   Employment History and EEOC Proceedings**

The following facts are uncontroverted.  Defendant Southern Management Corporation is a residential property management company in the mid-Atlantic region.  (Paper 21, Ex. 5, Wright Aff. ¶ 2). Plaintiff Susan Jordan began working for Defendant on March 10, 2003, as an A-2 Leasing Professional at its Southview property in Oxon Hill, Maryland.[1]  (Paper 17 ¶ 9).  At Southview, Plaintiff

---

    [1]  In the exhibits, Plaintiff is sometimes referred to by her maiden name, Susan Licon, or by a combination of her maiden and married names, Susan Licon-Jordan.  For consistency, the court will refer to her by her present name, Susan Jordan.

worked with Odell Moon, the property manager, and Theresa Roulhac, the leasing manager.

In August, 2003, Plaintiff was promoted to assistant leasing manager. (*Id.* ¶ 10). In mid-September 2004, Plaintiff informed her co-workers that she was pregnant with twins. (Paper 21, Ex. 1, Jordan Dep., at 46-47). During the same month, Plaintiff applied for, and was accepted to, the Southern Difference Institute ("SDI"). SDI was a training program, operated by Defendant, that taught management skills. (*Id.* at 50). Attending SDI was a prerequisite to acceptance into the Property Management College, another professional development program operated by Defendant. (*Id.*). Completion of SDI did not guarantee admission into the Property Management College, was not a prerequisite for managerial positions, and did not guarantee a pay raise. (*Id.*). According to Plaintiff, when she informed Moon and Roulhac of her acceptance to SDI the following occurred:

> . . . Theresa [Roulhac] asked if I would be okay attending SDI this year because I was pregnant. And I had told her yes. And then Odell [Moon] said that he thought it would be best for me to wait until next year so that I wouldn't put too much stress on myself and the babies . . . When he told me I would be guaranteed a spot in the next year's class, I told him okay.
> Q: Did you ever tell him that you didn't want a spot next year, that you wanted to go this year?
> A: No. They sounded like they really wanted me to wait.

(*Id*. at 51-52).  Moon then contacted Linda Farnsworth, director of SDI, and informed her that Plaintiff would postpone participation in SDI until the following year.  A memorandum Farnsworth sent to Bonita Queen, Defendant's human resources director, on November 29, 2004, corroborates this sequence of events.  (Paper 31, Ex. 12).  The memorandum stated that on October 5, 2004, Farnsworth received a call from Moon indicating that Plaintiff would not attend the 2004-2005 session of SDI and to withdraw her application and acceptance.

> Mr. Moon said that Theresa Roulhac, Leasing Manager, and he had discussed participation in SDI with Susan [Jordan].  Mr. Moon told me that Susan [Jordan] was pregnant with twins and that the three of them, Mr. Moon, Ms. Roulhac and Ms. [Jordan] had decided that because of the extra work and travel required for SDI, Ms. [Jordan] would attend next year.
> Based on this conversation, Susan [Jordan] was not included in the 2004-05 session of SDI and she will be included in SDI next year.

(*Id*.).

In mid-October 2004, Roulhac was promoted from leasing manager to assistant property manager, creating a vacancy for a leasing manager position at Southview.  (*Id*. at 61).  Plaintiff testified that for months prior to this, Moon had "continuously assured" her that she would be promoted to the next available leasing manager position.  (*Id*. at 59).  Plaintiff stated that when she "came into work on that Monday I saw that the job had been posted and I

3

couldn't understand why, because from our previous discussions I was always told that it would be mine." (*Id*. at 61-62).   Plaintiff went on, "I asked [Moon] why the job was posted if he had told me I could have it, and he said that there was protocol, that he had to list it, and he said he didn't want anyone to think that he just gave me the job . . . at the end of the meeting he said . . . that I was the unofficial leasing manager." (*Id*. at 62).

Roulhac and Moon interviewed several people for the leasing manager position, including Plaintiff, and ultimately gave the job to Charmaine Ferebee.   On November 4, 2004, Roulhac and Moon met with Plaintiff and told her that they had chosen Ferebee. (*Id*. at 73-75).   Plaintiff stated that Moon expressly told her that the decision was not based on her pregnancy. (*Id*.).   Roulhac and Moon stated that they chose Ferebee over Plaintiff based on her experience and her performance during the interview. (Paper 21, Ex. 2, Moon Dep., at 45-46).   Ferebee had been a leasing manager for two years at another property managed by Defendant.   Also, for her interview, Ferebee prepared "an elaborate presentation analyzing the Southview rental market.   In contrast, Jordan was unprepared." (Paper 21, Ex. 4, Moon Aff. ¶ 6).   Plaintiff acknowledged that she did not prepare for her interview and that she felt "awkward" during the interview because of its formality. (Paper 21, Ex. 1, Jordan Dep., at 66-67).

On November 15, 2004, Plaintiff filed a charge of discrimination with the Prince George's County Human Relations Commission ("first charge"). (Paper 31, Ex. 3). Plaintiff alleged that Defendant had discriminated against her based on her gender and pregnancy because Moon encouraged her to postpone attending SDI until the following year. (*Id.*).[2]

On November 9, 2004, Plaintiff slipped and fell in the file room. She began having severe cramps in her lower back and abdomen and a throbbing sensation in her back. (Paper 21, Ex. 1, Jordan Dep., at 82). She immediately left work to go to the hospital. (*Id.*). Plaintiff did not return to work until November 20, 2004. On November 10, 2004, Plaintiff visited her physician on a previously scheduled follow-up visit. (*Id.* at 93). Plaintiff stated that her doctor told her to "take it easy" and she interpreted that to mean that she should stay home from work. (*Id.* at 95). On November 16, 2004, Plaintiff received a doctor's note stating she should work on a modified schedule of four hours a day. (Paper 21, Ex. 1, Jordan Dep., Dep. Ex. 11). The note also

---

[2] The United States Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue letter based on this charge on October 14, 2005. (Paper 21, Ex. 1, Jordan Dep., Dep. Ex. 23). The letter explained that Plaintiff had 90 days to file a lawsuit based on the allegations in that charge. Plaintiff testified at her deposition that she received the letter sometime in October 2005. (Paper 21, Ex. 1, Jordan Dep., at 146-47). She later recanted that testimony and presented an affidavit reciting that she never received the letter. (Paper 41, Jordan Aff. ¶ 5).

indicated that she should be excused from work for November 5 and
10, because she had been under her doctor's care on those days.
(*Id.*).  When Plaintiff returned to work on November 20, she did not
submit a doctor's note explaining her absence for any of the other
days she had missed.  (*Id.* at 95).

Plaintiff worked approximately four days on her reduced, four-
hour a day schedule.  (*Id.* at 97).  On November 29, Plaintiff
experienced cramping and called in sick to work.  (*Id.* at 97-98).
She also made an appointment to visit the doctor on the following
day.  (*Id.*).  She called in sick to work again on November 30 so
that she could visit her doctor.  (*Id.* at 99).  Defendant asked her
to submit documentation explaining her absences.

On December 1, 2004, Sharon Wright, Defendant's benefits
administrator, called Plaintiff to discuss her leave and faxed the
following letter:

> After speaking with you this afternoon, I
> faxed over the FMLA forms for your completion,
> along with the ones for your Physician.
> First off, I am in receipt of an accident
> report from Theresa Roulhac for which you have
> made a claim for a Workers Comp injury,
> sustained on November 8, 2004.  Your doctors
> orders dated November 16, 2004 have placed
> you on a modified work schedule of 4 hours per
> day.  Due to this modified schedule, while on
> FMLA leave, it will be necessary to change you
> to an hourly rate for payroll purposes, until
> you are released to full duty. . . .

(Paper 31, Ex. 4).  On December 2, Plaintiff received and submitted
a doctor's note indicating that she was to be placed on bed rest

from November 30 until December 14.  (Paper 21, Ex. 1, Jordan Dep., at 100; paper 31, Ex. 6).

On December 15, Plaintiff was placed on permanent bed rest. (Paper 21, Ex. 1, Jordan Dep., at 116).  The FMLA forms completed by Plaintiff's physician indicated that Plaintiff's condition began on November 30, she was to be out of work starting December 15, and she should remain out of work until six weeks after delivery. (Paper 31, Ex. 5).  Plaintiff's estimated date of delivery was April 7, 2005.  (Paper 31, Ex. 6).

On February 14, 2005, Plaintiff received a letter from Defendant terminating her employment:

> According to the last Physician's Disability orders, you are unable to return to your position as an Assistant Leasing Manager. The date of your injury was November 9, 2004.
> We wish you a speedy recovery, but must inform you that Southern Management can no longer hold your position.
> Your position is terminated with this notice, however you are eligible for re-hire to a "like or similar position." . . .
> Once you have been released to work without restrictions, call our Career Services Center. . . .

(Paper 31, Ex. 8).  On March 15, 2005, Plaintiff filed a second charge of discrimination with the Prince George's County Human Relations Commission, alleging retaliatory discharge ("second charge").  (Paper 31, Ex. 9).  The Commission determined that there was sufficient evidence to substantiate Plaintiff's allegation of retaliatory discharge.  (Paper 31, Ex. 10).

Plaintiff delivered her twins by caesarian section on March 24, 2005, and was cleared by her physician to return to work on May 19, 2005. (Paper 21, Ex. 1, Jordan Dep., at 130). Once she was able to return to work, Plaintiff did not re-apply to work for Defendant. (*Id*. at 133).

**B. Procedural History**

On April 6, 2006, Plaintiff filed a three-count complaint against Defendant in this court. (Paper 1). On June 28, 2006, Plaintiff filed an amended complaint alleging the following Counts: (I) failure to promote based on pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"); (II) retaliation for filing the first charge, in violation of Title VII; (III) wrongful termination after qualifying for worker's compensation benefits, in violation of Maryland public policy; and (IV) wrongful interference with her rights under the Family Medical Leave Act, as amended, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"). (Paper 17). In the process of briefing the summary judgment issues, Plaintiff withdrew her claim for wrongful termination based on worker's compensation benefits, Count III. (Paper 31, at 9 n.2). That claim will be dismissed.

Defendant moved for summary judgment on October 23, 2006. Defendant argues that it is entitled to judgment because (1) Plaintiff did not file timely in connection with her first charge of discrimination; (2) even if she had filed timely, the claims

8

based on pregnancy discrimination fail as a matter of law; (3) Plaintiff cannot show that Defendant's stated reason for her termination, exhaustion of FMLA leave, was mere pretext; and (4) Defendant did not interfere with Plaintiff's FMLA rights because she received her full 12 weeks of leave, or if she did not receive them, she suffered no prejudice as a result.   (Paper 21, at 2).

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).   The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.   *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment

as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). *See also havePower, LLC v. Gen. Electric Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003) (citing 10A Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)). The court reviews each motion under the familiar standard for summary judgment, *supra*. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A *Federal Practice & Procedure* § 2720.

## III.  Failure to Promote (Count I)

In Count I, Plaintiff alleges that Defendant unlawfully failed to promote her when Moon forced her to withdraw from SDI and when she was not promoted to leasing manager. Defendant asserts that it is entitled to summary judgment on Count I because Plaintiff's lawsuit was untimely with respect to this count.

## A. Exhaustion of Administrative Remedies

Plaintiff alleges that she exhausted her administrative remedies with regard to Count I when she filed her first charge of discrimination on November 15, 2004. (Paper 17 ¶ 6). Plaintiff's first charge stated:

> I gained employment with the Respondent on March 10, 2003, as an Assistant Leasing Manager. I have always demonstrated

11

satisfactory performance.  On October 1, 2004,
I was accepted into the Respondent's training
program in supervision and leadership.  The
training program was scheduled to start on
November 9, 2004, and meet twice a month.  My
Property Manager (Male) conducted a meeting
with me.  The cited Property Manager (Male)
informed me that I could not miss any of the
training days.  The cited Property Manager
(Male) told me that since I was pregnant, it
would be better if I waited until next year to
attend the program. The cited Property Manager
(Male) called the program's Facilitator and
informed her that I would not be attending the
program.  Other similarly situated employees
(non-pregnant) have not been treated in this
manner.

(Paper 21, Ex. 1, Jordan Dep., Dep. Ex. 22).  Both parties approach

the timeliness issue as if the first charge included Plaintiff's

claim that she suffered pregnancy discrimination when she was not

promoted to leasing manager.   Nothing in the actual charge,

however, refers to a failure to promote.   Thus, it is not clear

that Plaintiff has exhausted her administrative remedies with

respect to her claim that she was denied the promotion to leasing

manager based on her pregnancy.

Ordinarily, a court may hear only those claims raised in the

EEOC complaint or those "reasonably related" to that complaint and

which "can be expected to follow from a reasonable administrative

investigation."  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247

(4th Cir. 2000) (citing *Chisholm v. United States Postal Serv.*, 665

F.2d 482, 491 (4th Cir. 1981)); *see Evans v. Techs. Applications &*

*Serv.  Co.*,  80  F.3d  954,  963  (4th  Cir.  1996)  ("Only  those

12

discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.").

The Fourth Circuit has held that,

> [w]hile "the EEOC charge defines the scope of the plaintiff's right to institute a civil suit," "an administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." In other words, "if a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit."

*Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (citations omitted).

It is unclear whether Title VII's requirement that the plaintiff exhaust administrative remedies is "jurisdictional, that is a court is obligated to enforce the requirement even if the defendant has overlooked it," *Bullard v. Sercon Corp.*, 846 F.2d 463, 468 (7th Cir. 1988), or whether it is a "waivable condition precedent to bringing suit," *Francis v. City of N.Y.*, 235 F.3d 763, 768 (2d Cir. 2000). *See Brown v. McKesson Bioservices Corp.*, 2006 WL 616021, at *3-*5 (D.Md. March 10, 2006), for a detailed discussion of this legal issue.

For the purposes of this case, however, it is not necessary to decide this question.  Plaintiff's claim that she was discriminated against when she was not promoted to leasing manager is procedurally barred either because she failed to exhaust her administrative remedies, or because it was filed untimely.  In other words, even if the claim that Defendant failed to promote Plaintiff to leasing manager due to her pregnancy was "reasonably related" to the claim that her withdrawal from SDI constituted pregnancy discrimination, such that both claims are included in the first charge, both claims are time-barred because Plaintiff failed to file the instant lawsuit within 90 days of receiving the right-to-sue letter.

**B.   Timeliness**

Title VII plaintiffs have a 90 day period following receipt of a right-to-sue letter to file their claim.   42 U.S.C. § 2000e-5(f)(1).  Although the 90 day time period for filing a civil suit may be subject to waiver and equitable tolling in limited circumstances, *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), the Supreme Court has noted the importance of strict adherence to procedural rules:

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980), "[i]n the long run, experience teaches that strict adherence to

14

the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

The EEOC issued a right-to-sue letter based on the first charge on October 14, 2005. (Paper 21, Ex. 1, Jordan Dep., Dep. Ex. 23). Plaintiff acknowledged that she received the right-to-sue letter in October 2005, although she could not remember the exact date. (Paper 21, Ex. 1, Jordan Dep., at 146-47). The presumption is that Plaintiff received the letter within three days. *See Baldwin County Welcome Ctr.*, 466 U.S. at 148 n.1 (noting that pursuant to Fed.R.Civ.P. 6(e), the presumed date of receipt is three days after the right-to-sue letter is mailed); *Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 630 (4th Cir. 1999) (unpublished opinion), *cert. denied*, 528 U.S. 1188 (2000) (adopting Fed.R.Civ.P. 6(e)'s three-day rule). Plaintiff's subsequent, self-serving and contradictory affidavit, stating that she did not recall ever receiving the right-to-sue letter, (paper 41, Jordan Aff. ¶ 5), does not suffice to create a triable issue of fact. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.")

The right-to-sue letter clearly stated that if Plaintiff wished to file a lawsuit based on the first charge, she must do so

within 90 days of her receipt of the notice, or her right to sue would be lost.  (Paper 21, Ex. 1, Jordan Dep., Dep. Ex. 23); 42 U.S.C. § 2000e-5(f)(1).  Plaintiff did not file suit until April 6, 2006, well after the 90 day limitations period had expired. Plaintiff failed to file timely in connection with her first charge, thus all claims arising out of that charge are barred by the statute of limitations.  Accordingly, Defendant is entitled to judgment on Count I, the failure to promote claim.  *See Harvey v. City of New Bern Police Dept.*, 813 F.2d 652 (4th Cir. 1987) (affirming grant of summary judgment to defendant because plaintiff filed suit past 90 day limitations period).

## IV. Retaliatory Discharge (Count II)

Plaintiff alleges that she was fired in retaliation for filing the first charge.  Section 704(a) of Title VII prohibits an employer from taking an adverse employment action against any employee "because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a). Under the burden-shifting framework first formulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff bears the initial burden of establishing a *prima facie* case of retaliation.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802-04).  Once this burden is carried, the burden shifts to the defendant, who is obliged to articulate a legitimate,

non-retaliatory justification for the adverse employment action. *See id.* If the defendant carries this burden, the onus is on the plaintiff to then demonstrate that the non-retaliatory reason advanced by the defendant is a mere pretext. *See id.; see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

In order to establish a *prima facie* case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events. *Equal Employment Opportunity Comm'n v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

It is undisputed that Plaintiff engaged in protected activity when she filed a charge of discrimination and that her employer took an adverse action against her by terminating her employment. Plaintiff, however, has not established a causal link between the two events. Defendant's benefits administrator, Sharon Wright, testified that in February, after she returned from her own absence, she reviewed Plaintiff's leave and determined that Plaintiff had exhausted her 12 weeks of leave. (Paper 21, Ex. 5, Wright Aff. ¶ 11). Wright then instructed Odell Moon to send Plaintiff a letter informing her that Defendant could no longer hold her position. (*Id*. ¶ 12; paper 21, Ex. 2, Moon Dep., at 69). Wright was not aware that Plaintiff had filed the first charge of

17

discrimination against Defendant until a month after she directed Moon to terminate Plaintiff. (Paper 21, Ex. 5, Wright Aff. ¶ 14). Plaintiff contends that it was, in fact, Moon who made the decision to terminate Plaintiff and that he was aware of the first charge of discrimination, thus establishing the causal link. (Paper 31, at 20). Plaintiff points to Moon's deposition testimony stating that Wright had no supervisory power over him, (paper 21, Ex. 2, Moon Dep., at 36), as evidence that Moon, not Wright, made the decision to terminate Plaintiff. (Paper 31, at 22-23).

Even if Plaintiff has established a *prima facie* case based on Moon's participation, she has not offered evidence that Defendant's reason for her termination was actually a pretext for retaliation. The letter specifically recited that her position was terminated because she was unable to return to work due to injury. Wright testified that Plaintiff was terminated for the sole reason that she could not return to work upon the expiration of her FMLA leave. (Paper 21, Ex. 5, Wright Aff. ¶¶ 11-12). Moon testified that he did not "question or challenge" Ms. Wright's instruction to terminate Plaintiff and that any calculation of the beginning and ending date for FMLA leave would be Ms. Wright's domain. (Paper 21, Ex. 2, Moon Dep., at 69-70). Wright calculated Plaintiff's FMLA leave from the time her condition began, on November 9, 2004, and concluded that it expired on February 3, 2005. (Paper 21, Ex. 5, Wright Aff. ¶ 11). Plaintiff disputes this calculation of her FMLA

leave.   Under Plaintiff's calculation, her FMLA leave began on December 15, 2004, and thus expired on March 8, 2005.   Thus, under Plaintiff's calculation, Defendant fired Plaintiff before her leave expired.   From this she concludes that Defendant's proffered reason is a pretext.

When reviewing a defendant's proffered reason for discharge and a plaintiff's corresponding claim of pretext, the court must "keep in mind that Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998) (internal quotation marks omitted) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377 (4th Cir. 1995)).   The court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions." *DeJarnette*, 133 F.3d at 299 (internal quotation marks omitted) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)).   Thus, once Defendant articulated a nondiscriminatory reason for Plaintiff's termination, expiration of FMLA leave, it did not become this court's "province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination." *DeJarnette*, 133 F.3d at 299 (internal quotation marks omitted) (quoting *Giannopoulos*, 109 F.3d at 410-11).

19

Plaintiff failed to offer any evidence that Defendant's proffered reason for termination - its belief that her FMLA leave had expired and that she could not return to work - was false. Taking the evidence in the light most favorable to Plaintiff, it shows that Defendant miscalculated Plaintiff's FMLA leave. Plaintiff's speculation that Defendant's alleged mistake must be a pretext is not sufficient evidence to sustain a claim under Title VII. *See Holmes v. e.spire Commc'ns*, 135 F.Supp.2d 657, 663-64 (D.Md. 2001). Defendant is entitled to summary judgment on Count II.

## V. Interference With FMLA Rights (Count IV)

Plaintiff argues that Defendant interfered with her rights under FMLA because it failed to notify her that it would designate her leave prior to December 15, 2004, as FMLA leave and it therefore miscalculated when her 12 weeks of leave expired. Plaintiff further argues that the miscalculation resulted in her termination prior to the expiration of her leave. Defendant argues that Plaintiff cannot show that she was prejudiced by the failure to receive notice because, even if she had received notice, she was physically unable to work at the time her leave would otherwise have expired.

The parties dispute the dates Plaintiff's FMLA leave began and expired. Defendant contends that Plaintiff's FMLA leave began on November 9, 2004 and expired on February 3, 2005. (Paper 21, Ex.

5, Wright Aff. ¶ 11).  Plaintiff contends that her FMLA leave did not begin until December 15, 2004, and thus did not end until March 8, 2005.  (Paper 31, at 9).

The FMLA provides that an eligible employee[3] must be allowed to take up to twelve work weeks of leave during any twelve-month period because of a serious health condition that prevents the employee from performing his or her job.  29 U.S.C. § 2612(a)(1)(D).  Under the FMLA, Defendant was entitled to require Plaintiff to substitute her vacation leave for FMLA leave.  29 U.S.C. § 2612(d)(2); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 300 (4th Cir. 1998).  Under the regulations promulgated under the FMLA, Defendant was required to "promptly (within two business days absent extenuating circumstances) notify [Plaintiff] that the paid leave [was] designated and [would] be counted as FMLA leave."  29 C.F.R. § 825.208(b); *Cline*, 144 F.3d at 300.

Defendant provided notice to Plaintiff that her leave would be designated as FMLA leave on December 1, 2004, when Wright faxed the FMLA paperwork to Plaintiff's home:  "Your doctors orders dated November 16, 2004 have placed you on a modified work schedule of 4 hours per day.  Due to this modified schedule, *while on FMLA leave*, it will be necessary to change you to an hourly rate for payroll

---

[3] An "eligible employee" is one who has been employed for more than twelve months before requesting leave under the FMLA, and has worked at least 1,250 hours within that period.  29 U.S.C. § 2611(2)(A).  There is no dispute that Plaintiff was an "eligible employee."

purposes. . . ."  (Paper 31, Ex. 4) (emphasis added).  Wright's letter indicates that Plaintiff was already on FMLA leave at the time of the letter.  Even if Wright's letter was inadequate notice, Plaintiff cannot show that Defendant violated her substantive rights under the FMLA.  The absence of notice is not, in and of itself, a violation of the FMLA.  "As the [United States Court of Appeals for the] Eighth Circuit recognized, failure to give proper notice is a valid basis for suit only if that failure functioned to 'interfere with or deny an employee's substantive FMLA rights.'" *Holmes*, 135 F.Supp.2d at 665 (quoting *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 939-40 (8th Cir. 2000)).  If Wright's letter was not proper notice that her FMLA leave began on November 9, Plaintiff was entitled to twelve weeks of FMLA leave beginning on December 15, 2004, and ending on March 8, 2005, as designated in her FMLA paperwork. (Paper 31, Ex. 7).

Under the FMLA, an eligible employee is entitled, upon return from FMLA leave, to be restored "to the position of employment held . . . when the leave commenced." 29 U.S.C. § 2614(a)(1)(A).  If an employee is unable to "perform an essential function" of her job "because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.214(b); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161-62 (2[d] Cir. 1999) (explaining that

22

if, at the end of the FMLA's twelve week leave period, an employee is unable to perform the essential functions of her former job, then "[a]ny lack of notice of the statutory twelve week limitation on FMLA leave could not rationally be found to have impeded" the employee's return to work).  If, however, Plaintiff was able to return to work upon the expiration of her FMLA, then Defendant was liable for failing to restore her to her former position.  29 U.S.C. § 2614(a)(1)(A).

Plaintiff was placed on bed rest from December 15, 2004 until six weeks after her delivery.  (Paper 21, Ex. 1, Jordan Dep., at 116).  Plaintiff delivered her twins by caesarean section on March 24, 2005 and was cleared by her physician to return to work on May 19, 2005. (*Id*. at 130).  Thus, Plaintiff was unable to return to work on March 9, 2005, when her leave would have expired by her calculations.  Plaintiff does not dispute this, but argues that if her "work performance was as good as Odell Moon commented, it would have been reasonable to have given Plaintiff extensions up to May in order to preserve her employment." (Paper 31, at 10).  This argument exceeds the scope of the FMLA.

In sum, Plaintiff's FMLA leave began to run on December 15, 2004, at the latest, and expired twelve weeks later, on March 8, 2005.  Plaintiff was unable to return to work on that date, and thus had no right to be restored to her former position.

Accordingly, summary judgment will be entered in favor of Defendant on Count IV, Plaintiff's FMLA claim.

**V. Conclusion**

For the foregoing reasons, summary judgment will be granted to Defendant, and denied to Plaintiff.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

24